**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BRANDY BACA,

      Plaintiff,

v.                                                                                    Civ. No. 15-938 SCY

NANCY BERRYHILL, *Acting
Commissioner of the Social Security
Administration*,

      Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO REVERSE OR REMAND**

      Plaintiff asks this Court to reverse the ALJ's decision denying her disability insurance

benefits ("DIB") and Supplemental Security Income ("SSI") benefits. Doc. 16. She argues that

the ALJ failed to appropriately consider the opinions of treating doctors, a consultative examiner,

a non-examining reviewer, a behavioral therapist, and a licensed independent social worker

("LISW"). Doc. 16 at 2. In his decision, the ALJ set forth a series of reasons why he found

Plaintiff to not be credible as well as various inconsistencies between her conduct and the

opinions of these medical sources.[1] Although the ALJ raises legitimate points and concerns, the

Court finds he did not provide sufficient grounds to discount the opinions of the medical sources

to the degree necessary to support his residual functional capacity ("RFC") assessment of

Plaintiff.

      Plaintiff's opening brief, however, only addressed one of the two bases for the ALJ's

decision. The primary reason the ALJ denied Plaintiff benefits is that she knowingly and

---

[1] For purposes of this Opinion, when the Court uses the term "medical sources" it refers to all of the individuals who provided an opinion about Plaintiff's mental health capacity, including her therapists. *See* SSR 06-03p ("The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources."). The Court recognizes Plaintiff's behavioral therapist and LISW are not "acceptable medical sources." *Id.*

willfully refused to attend a series of agency consultative examinations. Because Plaintiff did not challenge (much less mention) the ALJ's decision to deny her benefits on this basis in her opening brief, the Court will **affirm** the ALJ's decision.

## I.    Background

Plaintiff was 33 years old at the time she filed her motion on June 13, 2016. She meets the insured status requirements of the Social Security Act through September 30, 2012 and has not engaged in substantial gainful activity since August 6, 2007.  Administrative Record (AR) 358. She alleges disability due to post traumatic stress disorder ("PTSD"), depression, and anxiety. AR 139, 162. Plaintiff has seen a number of doctors and therapists since 2007. As set forth below in further detail, these individuals have consistently opined that Plaintiff has various levels of social limitations.

Plaintiff filed her applications for disability insurance benefits and supplemental social security income in December 2008. AR 139, 143. Administrative Law Judge ("ALJ") Barry O'Melinn first denied Plaintiff's claim in August 2011. AR 22. Plaintiff then appealed to the United States District Court for the District of New Mexico and Magistrate Judge Carmen Garza remanded the case so that the ALJ could engage in further discussion regarding medical sources. AR 492.

On remand, in a June 24, 2015 decision, ALJ O'Melinn again denied Plaintiff's claims. He explicitly based his decision on two separate and distinct grounds. AR 354-373. First, he concluded that Plaintiff knowingly and willfully refused to attend a consultative exam and that good cause did not exist for her to miss the exam; therefore, he dismissed her case for failure to cooperate. AR 356. As an alternative basis for denying Plaintiff benefits, the ALJ reviewed the record and concluded that Plaintiff is not disabled. AR 373. The ALJ's June 24, 2015 decision

later became the final agency decision for purposes of judicial review. This appeal followed.

## II.   Applicable Law

### A.  Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the Claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make

the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B.  Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and

4

discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## III.   Analysis

Plaintiff alleges that the ALJ made the following errors in reaching his decision that she

is not disabled:

> A. ALJ O'Melinn impermissibly collapsed the two-step "controlling weight" analysis of the medical opinions from treating sources Kieve and Brown, and failed to give adequate reasons for rejecting their medical opinions, contrary to SSR 96-2p and Tenth Circuit precedent.
> B. ALJ O'Melinn failed to apply the correct standards in analyzing the opinion of behavioral therapist Rodriguez and LISW Sandoval, contrary to SSR 06-03p.
> C. ALJ O'Melinn did not give good reasons for accepting only the portions favorable to a finding of nondisability from the medical opinions of psychiatric consultative examiner Steinman and non-examining reviewers Chiang and Wewerka.
> D. ALJ O'Melinn's RFC Assessment is legally deficient because it fails to express all limitations in terms of <u>work-related mental activities</u>, contrary to 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.920(a)(4)(iv) and SSR 96-8p.

Doc. 16 at 2 (initial word capitalizations altered). Plaintiff separates the different types of

medical sources in her first three arguments. Common to each of these arguments, however, is

the assertion that the ALJ failed to follow the correct legal process and committed error in failing

to give appropriate weight to portions of the opinions of the various medical sources. These

alleged errors provide the backdrop for the final error Plaintiff alleges: the ALJ's RFC

assessment failed to take into account all of the limitations in Plaintiff's work-related mental

activities. *See* Doc. 16 at 21 ("ALJ O'Melinn rejects the social limitations found by every

opinion of record on the basis of Ms. Baca's perceived gregariousness" and his failure to

recognize limitations Plaintiff has working with co-workers and supervisors constitutes error).

Thus, although Plaintiff breaks her argument into four parts, these arguments can be analyzed

together, taking into account the different legal standards that apply to the various medical

sources. Regardless of the medical source, Plaintiff's assessed RFC is the product of the ALJ's

determination that Plaintiff is not credible, that the opinions of the medical sources regarding Plaintiff's social limitations are not reliable, and that Plaintiff has engaged in various activities that demonstrate her ability to work. The issues Plaintiff raises, then, can be distilled into whether the ALJ followed the correct legal standards in reducing the weight of the various medical sources and whether substantial evidence supports the ALJ's determination that Plaintiff has the RFC set forth in the ALJ's opinion.

More critical than the issues Plaintiff raises in her appeal, however, is the issue Plaintiff does not raise. Absent from the bases of Plaintiff's appeal is a challenge to the ALJ's decision to dismiss her case for failure to cooperate. After noting that Plaintiff failed to address this issue in her opening brief, Defendant argues in its Response that the Court should uphold the ALJ's decision to dismiss the case based on "Plaintiff's unexplained failure to attend three consultative examinations scheduled by the agency." Doc. 20 at 8. In her Reply, Plaintiff responds to this argument. Doc. 21 at 7-9. This response comes too late. Plaintiff failed to appeal this part of the ALJ's decision; therefore, the decision stands. Before affirming the ALJ's decision to dismiss Plaintiff's case based on her failure to cooperate, however, the Court will address Plaintiff's arguments as they relate to the ALJ's alternative basis for denying Plaintiff benefits – his determination that Plaintiff is able to work.

**A. ALJ's Determination That Plaintiff Is Not Credible**

In general, the ALJ paints a picture of a claimant with little regard for the truth who is willing to say anything to obtain the benefits she seeks. He first points out that she lied to him about her work history. AR 365. Plaintiff initially testified that she had not worked since 2012 but, when confronted with tax records demonstrating $2,600 in earnings from Quality Care (a health care provider) in 2012 and $5,000 in 2013, testified that she had gotten the years mixed

up. AR 424-25. She then testified that she had not worked at all since then. AR 426. When next confronted with her 2014 earnings, however, Plaintiff testified that she worked for New Choices (a health care provider) for "maybe a month" for a gentleman who needed someone to bring him wood, cook, clean, and do other "just normal things." AR 427. The ALJ points out in his decision, however, that Plaintiff's work for New Choices spanned several months – she earned $1,696 in the first quarter of 2014 and $728 in the second quarter of 2014. AR 366. He concluded that Plaintiff tried to "minimize this work . . . in an attempt to present her case in a more favorable light." AR 366.

At the hearing, Plaintiff explained that her husband actually did some of the above work. AR 425-27. The ALJ found this to be unlikely, as, for part of the time Plaintiff was working, her husband had a separate job with the New Mexico Department of Transportation. AR 366. The ALJ further discredited Plaintiff's testimony given that, even though Plaintiff testified that she quit working for Quality Care in 2013 because "she felt it was too much and that it was not right", she then obtained another job doing home healthcare. AR 366. As the ALJ points out, "[i]t is difficult to believe that she would obtain the same type of work if she had previously had difficulty doing it. It makes even less sense that her husband, rather than do this work for himself, would use claimant as a proxy." AR 366. As further support that Plaintiff likely did this work for herself, he noted that, in October 2012, she told her therapist "that she was working with a home health service one day a week and assisted her husband once in a while with odd jobs" and "did not report any difficulties with this work." AR 366. Even if Plaintiff's husband did do this work, however, the ALJ noted this evidences "a lack of honesty with her employers about who was performing her work . . . ." AR 366. Plaintiff's dishonesty, the ALJ concluded,

"made it difficult to give much credence to the finding that she [herself] required home help" which Plaintiff received pursuant to an application she filed in May 2014. AR 366.

In addition to claiming that she was unable to do the home health service work for which she was paid, Plaintiff claimed that her husband filled out the applications for these jobs because she could not understand "most of the things on the application." AR 434. The ALJ found this claim not  credible, however, "because her January 2009, February 2013, and January 2014 function reports do not indicate that anyone helped her to complete them, the hand writing is visibly different from the reports completed by her husband, and it is also written in the first person." AR 361.

In between the time Plaintiff worked for Quality Care and the time she worked for New Choices, she collected unemployment benefits. AR 366. The ALJ recognized that "Receipt of Unemployment Benefits is not necessarily inconsistent with a claim of disability." AR 366-67. Nonetheless, the ALJ found that, "since one is generally required to be ready willing and able to work as a precondition of receiving such benefits, receiving unemployment may be seen in certain circumstances, as inconsistent with seeking disability benefits." AR 367. The ALJ found it inconsistent that Plaintiff would seek unemployment benefits at the same time she sought disability benefits and that this inconsistency undermined her claim for disability. AR 367. Also discrediting Plaintiff's claims that she could not work, the ALJ noted that Plaintiff "requested a physical for work in August 2013 for a commercial driver's license" and that "[i]t makes no sense that a person who could not drive would apply for a CDL [an exam that she passed]." AR 366.

The ALJ did not limit his attack on Plaintiff's credibility to inconsistencies regarding her work history. He pointed out that, even though Plaintiff "testified that she did not leave her

home, had a hard time with a lot of people and bad anxiety, could not go out on her own, did not

have any friends, and could not live on her own now", her treatment notes indicated that she

"was able to travel, visit friends, and have an extramarital affair." AR 367. Specifically, in 2010

she reported that a friend was coming to see her; in 2011, she attended a New Year's Eve party

(where her husband struck her because he thought she was flirting); also in 2011, she and her

husband stayed in Albuquerque for a month with her best friend; in January 2012, she traveled to

Iowa to help her mother move; and in January 2015, she became pregnant as the result of an

extramarital affair. AR 367. The ALJ further noted an instance in January 2014 in which she

injured herself while cleaning snow off of the roof of her house, and an instance in June 2014

when she indicated that gathering firewood increased her back pain. AR 360. The ALJ

concluded, "[t]hese activities suggest that she was less limited than alleged." AR 360. The ALJ

further found that Plaintiff "suggested she would be more social if not for her husband and lack

of funds", that her husband limited her ability to see others, and that she would like to see her

family in Iowa more, but could not due to a lack of funds. AR 367. The ALJ concluded that the

above facts "reduce the credibility of her testimony and suggest that she was less impaired than

alleged." *Id*.

The ALJ continued his assault on Plaintiff's credibility with examples of information she

should have, but did not provide to her medical care providers. On September 28, 2009, in

connection with her treatment at New Mexico Behavioral Health, Plaintiff agreed to stop

psychotherapy "as depression is manageable and she is not ready to address PTSD at this time."

AR 233. The ALJ observed, however, that in January 2015, Plaintiff stated that she did not wish

to return to New Mexico Behavioral Health "because they did not do anything for her." AR 365.

"This inconsistent reporting," the ALJ found, "reduces her credibility as she previously did tell

these providers that her medications improved her condition and that she was doing well enough that she no longer needed treatment." AR 365.

Further, the ALJ found that Plaintiff "appears to have withheld the fact that she used heroin for two years from her clinicians as none of the medical records from New Mexico Behavioral Health or Sage Neuroscience noted that the claimant used heroin. The claimant also failed to mention her heroin use to her primary care clinician at El Centro Family Health until she feared that she was pregnant in January 2015." AR 365. In February 2015, however, Plaintiff acknowledged that she had been using heroin for two years. *Id*.

The ALJ also extensively documented the many and repeat instances in which Plaintiff missed appointments with mental health professionals. AR 364, AR 755. As the ALJ noted, New Mexico Behavioral Health Institute decided to delete Plaintiff from therapy services for non-attendance based on a review in October 2013 that showed she had not attended therapy since July 1, 2013. AR 866. In spite of having been sent a letter notifying her that she would be deleted because of missed therapy and psychiatry appointments, the ALJ noted that Plaintiff claimed in December 2014 to "not know why she was deleted from therapy." AR 365.

The ALJ asserted that Plaintiff chose to discontinue therapy as of November 2012 due to the retirement of her therapist, LISW Alicia Sandoval. Plaintiff stated at the time that "if I feel that I need it [therapy] again, I will inform my psychiatrist or staff at CBS." AR 755. The ALJ determined that "[h]er decision to stop therapy suggests that she was satisfied with her current condition and was stable." AR 364. Although Plaintiff may have intended to discontinue therapy, the record reveals that she continued to receive therapy until July 2013. AR 772, AR 866. Accordingly, the fact that Plaintiff did not actually discontinue therapy undermines this particular line of attack on Plaintiff's credibility.

The ALJ also found that Plaintiff's "refusal to be examined by three Agency doctors leads me to conclude she is concealing material facts." AR 367. The ALJ summed up his assessment of Plaintiff's credibility as follows:

> Claimant's credibility is very poor. . . . She also is not candid with her providers. She has worked, though she claims she cannot. She drives, but says she cannot. She climbs on roofs and hauls wood, but says she is completely disabled. She says she cannot leave home but goes to parties. As such, I have given her subjective claims little weight and relied on more credible evidence.

AR 367. Plaintiff, wisely, does not challenge the ALJ's credibility findings. *See Casias*, 933 F.3d at 801 (the Court rarely disturbs an ALJ's credibility findings because, as the trier of fact, the ALJ is the individual optimally positioned to observe and assess witness credibility); *see also Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (ALJ credibility determinations are generally "binding upon review.").

### B. Whether ALJ May Reduce the Weight of Opinions from Treating Doctors and Other Medical Sources Based, in Part, on Conclusion That They Derive From Information Provided by Non-Credible Claimant

Given the unassailability of the ALJ's credibility findings, the next issue concerns the application of these findings. In other words, what use could the ALJ make of his determination that Plaintiff was not credible? He could certainly discount all of her self-serving statements regarding her disability. But the ALJ went beyond this. He stated:

> Her lack of candor also reduces the value of the opinions of her providers, who rely at least in part on her reporting. Claimant's records indicate she omitted key facts such as substance abuse. She was less than candid with me on many occasions. I conclude she did so to enhance her likelihood of obtaining benefits. I have no doubt she would also do so with her providers to suit whatever interests she was pursuing at a given time.

AR 367; *see also* AR 369 ("[a]s discussed above claimant's poor reporting also of essence undermines the value of their opinions."). Thus, the ALJ reduced the weight he gave to Plaintiff's medical sources based on his assumption that their opinions were based on faulty data:

he concluded that to obtain the medical opinion she wanted, Plaintiff provided her doctors with false information and withheld certain relevant information. In doing so, particularly with regard to Plaintiff's treating physicians, did the ALJ go too far? *See Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant."). The first step in answering this question is to determine whether the ALJ complied with requirements in place for analyzing the opinion of treating physicians.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). Therefore, when supported by the medical evidence and consistent with the record, a treating physician's opinion merits controlling weight. *Id.*

If the treating physician's opinion is inconsistent with the record or not supported by medical evidence, the opinion does not merit controlling weight but still must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is

a specialist in the area upon which an opinion is rendered; (6) other factors
brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal citations and quotations

omitted); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). Not every factor is applicable in every

case, nor should all six factors be seen as absolutely necessary. What is necessary, however, is

that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any

subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373

F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385

F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two

steps. First, the ALJ must find that the opinion is (a) not supported by medical evidence and/or

(b) not consistent with the record. Second, the ALJ must determine what weight to give the

opinion according to the above listed six factors. Like all findings, an ALJ's findings in these

two steps must be supported by substantial evidence.

Here, the ALJ assigned little weight to the opinions of psychologists Carol Kieve and

Russel Brown, Plaintiff's treating psychologists. AR 368-69. In doing so, the ALJ cited

numerous activities of Plaintiff he found to be inconsistent with the limitations these doctors

expressed. The Court finds that substantial evidence exists to support the ALJ's decision not to

give the opinions of these treating psychologists controlling weight because those opinions are

not consistent with the record. Further, although the ALJ did not explicitly discuss each of the

above six factors, he was not required to do so. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th

Cir. 2007). The ALJ's overall discussion of the record convinces the Court that the ALJ

adequately considered each of the six factors.

A more difficult question is whether the ALJ impermissibly discounted the opinions of numerous medical sources in the record based on his assumption that Plaintiff was dishonest with them and that this dishonesty caused them to render opinions based on false data. *See* AR 367 ("She was less than candid with me on many occasions. I conclude she did so to enhance her likelihood of obtaining benefits. I have no doubt she would also do so with her providers to suit whatever interests she was pursuing at a given time."). In 2014, in connection with Plaintiff's previous appeal, Plaintiff challenged "the ALJ's rejection of Ms. Sandoval's opinion because she relied on Ms. Baca's self-reporting of her symptoms, while the ALJ found that, overall, Ms. Baca was not credible." *Baca v. Colvin*, No. 1:12-cv-01270-CG, Doc. 19 at 15 (D.N.M. January 28, 2014). The Court noted that "an ALJ may not judge a 'medical professional on how he should assess medical data – plaintiff's complaints.'" *Id*. at 15-16 (citing *Valdez v. Barnhart*, 62 F. App'x. 838, 842 (10th Cir. 2003) (unpublished)).

In his most recent decision, the ALJ directly addressed this concern. He stated:

> I note that the District Court decision indicates that an ALJ may not question a doctor's methods. I am not doing so. Rather I question claimant's candor with her providers. If a person tells a doctor things that are not true, or makes material omissions, the doctor is likely to come to incorrect conclusions. This is no reflection on the doctor's methods or abilities. Rather it takes into account the critical importance of candid reporting in the doctor patient relationship.

AR 367 n.2. What the ALJ says is true: a medical opinion premised on false information or material omissions is likely to be wrong. As this Court noted in a previous decision, for this reason an ALJ is not required "to lend a deaf ear to the statements underlying [a medical] opinion, no matter how unreliable those underlying statements might be." *Houston v. Colvin*, 180 F.Supp.3d 877, 888 (D.N.M. 2016).

However, the same case the Court previously cited, *Valdez v. Barnhart*, 62 F. App'x 838 (10th Cir. 2003) (unpublished), indicates that an ALJ commits error when he reduces the weight

assigned to the opinions of a claimant's medical sources based on his general concerns about whether the claimant provided them honest information. In *Valdez*, a treating psychologist determined "that plaintiff was disabled because he could not tolerate the stress of dealing with people or being supervised even by family members." *Id*. at 841. However, "[b]ecause the ALJ did not believe plaintiff, he also rejected the conclusions of the psychologist who treated plaintiff, and of the psychiatrist and psychologist who examined plaintiff, because their opinions were based, in part, on his complaints." *Id*. The Tenth Circuit determined that by rejecting these opinions because they were based on the plaintiff's complaints the ALJ found not credible, the ALJ "impermissibly . . . [placed himself] in the position of judging a medical professional on how he should assess medical data—plaintiff's complaints." *Id*. at 842. "Because the ALJ failed to follow the proper procedure in assessing plaintiff's medical evidence of mental impairments," the Tenth Circuit concluded that "the ALJ's finding of nondisability must be reversed." *Id*. at 843; *see also Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005) (unpublished) (an ALJ cannot reject a doctor's opinion "solely for the reason that it was based on [a claimant's] responses.").

*Valdez* highlights that, although it may ultimately lead to the same place, there is a difference between reducing the weight of a doctor's opinion based on contradictory evidence in the record and reducing the weight of the doctor's opinion based on *speculation* that the doctor's opinion would have been different had the doctor considered the contradictory evidence. A simple example illustrates the difference between these two processes. If a claimant effortlessly walks into a hearing before the ALJ, the ALJ does not have to accept a treating physician's opinion that the claimant cannot walk and will never be able to walk. Indisputably, the ALJ may discount the doctor's opinion through evidence acquired totally outside the parameters of the treating physician's examination. Indeed, two of the six criteria the ALJ must consider in deciding what

15

weight to give the treating psychologist's opinion provide the ALJ with an avenue to give the opinion little weight. For instance, pursuant to the fourth criteria, the ALJ must consider the "consistency between the opinion and the record as a whole." *See Watkins*, 350 F.3d at 1301. Further, pursuant to the sixth criteria, the ALJ must consider "other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.*

The more difficult question is whether an ALJ may also discount the doctor's opinion based on the ALJ's assumption that the patient falsely represented that he could not walk during his exam with the treating physician. Because *Valdez* is unpublished and has no precedential value, the Court looks to published Tenth Circuit cases to resolve this question. *See* 10th Cir. R. 32.1. In *McGoffin v. Barnhart*, the Tenth Circuit has stated:

> "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000) (internal quotations omitted) (emphasis added). Although we may not second-guess an ALJ's credibility judgments, such judgment by themselves "do not carry the day and override the medical opinion of a treating physician that is supported by the record."

288 F.3d 1248, 1252 (10th Cir. 2002). *McGoffin* makes clear that an ALJ needs contradictory medical evidence to "outright" reject the opinion of a treating physician. The proscription against rejecting a doctor's opinion *solely* because it was based on a claimant's responses "does not stand for the proposition that an ALJ cannot, *in determining what weight to assign an opinion*, consider that the opinion is based on subjective information provided by the claimant." *Houston*, 180 F.Supp.3d at 888. Because rejecting an opinion outright is different than reducing its weight,

*McGoffin* does not address the situation in the present case where an ALJ discounts rather than outright rejects the opinion of a treating physician.[2]

Although an ALJ may not substitute his opinion for that of a treating physician, the Tenth Circuit has allowed an ALJ to question the basis for the doctor's opinion. For instance, an ALJ may discount the opinion of a treating physician based on discrepancies between a treating physician's restrictive functional assessment and that physician's contemporaneous treatment notes. *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001). More broadly stated, an ALJ may discount the opinion of a treating physician because that doctor's "assessment was based on [the claimant's] subjective assertions rather than objective medical evidence." *Id*.

In *Oldham v. Astrue*, 509 F.3d 1254 (10th Cir. 2007), the Tenth Circuit reinforced this rationale. There, a claimant alleged disability based on memory problems, seizures, and reflex sympathetic dystrophy ("RSD") (a chronic pain syndrome). *Id*. at 1254. Contradicting the claimant's claims of total disability were two videotape recordings showing claimant "engaging in physical activity far beyond the capacity that she had reported to various medical providers." *Id*. at 1257. Based on this evidence of the claimant's "propensity to exaggerate her symptoms and manipulate test results, the ALJ refused to credit opinions of treating and examining medical providers that depended on [the claimant's] veracity." *Id*. at 1257. The Tenth Circuit held, "[i]n our view, this refusal was proper." *Id*. Notably, *Oldham* indicates that an ALJ can permissibly discount medical source opinions that, as the district court noted, "were based upon [] subjective complaints and test results which [the claimant] could manipulate because the ALJ did not find

---

[2] *McGoffin* also makes clear that an ALJ's credibility determination cannot "override" the opinion of a treating physician when that opinion is "supported by the record." 288 F.3d at 1252. This is not surprising, as the touchstone inquiry in a social security case is always whether the opinion of the ALJ is supported by substantial evidence.

[the claimant] credible."[3] *Id.* at 1256. Thus, it appears under *Oldham* that when a treating physician's opinion is based on subjective information a claimant provides and that the ALJ appropriately finds not credible, the ALJ can discount that opinion. This is consistent with this Court's previous determination that "[a]lthough the ALJ cannot substitute his judgment for that of a psychiatrist, the Tenth Circuit has not forbidden an ALJ from considering information unavailable to the psychiatrist that discredits the subjective statements on which the psychiatrist relied." *Houston*, 180 F.Supp.3d at 888. With this understanding of the means through which an ALJ can discount the opinions of treating physicians and other medical sources, the Court returns to the touchstone inquiry of whether substantial evidence supports the ALJ's finding of non-disability in the present case.

### C. Substantial Evidence Did Not Exist to Justify Reducing the Weight of the Medical Provider Opinions As Necessary to Support the ALJ's RFC Assessment

The RFC the ALJ assessed is not in line with consistent medical provider opinions that Plaintiff's limitations are greater than what the ALJ found. The medical sources consistently opined that Plaintiff had various levels of limitation in working with co-workers and/or supervisors. The ALJ cited to no contradictory medical sources to discount the weight of these opinions.[4] Although relevant, the non-medical contradictory evidence the ALJ cited was insufficient to overcome the combined weight of consistent opinions from Plaintiff's medical sources that supported her social limitation claims and refuted the ALJ's RFC assessment.

The ALJ assessed the opinions of the various medical sources as follows. In 2009, Warren Steinman, PhD, completed a psychological consultative examination and diagnosed

---

[3] The district court described the ALJ as "rejecting" rather than "discounting" the medical source opinions. The Tenth Circuit, however, did not address whether the ALJ could outright reject as oppose to discount.

[4] Plaintiff's refusal to attend consultative examinations, of course, limited the medical opinions available to the ALJ.

Plaintiff with major depressive disorder and generalized anxiety disorder. AR 367. He further opined that Plaintiff would not likely be able to interact effectively with co-workers or supervisors. AR 367. The ALJ concluded "for the reasons discussed above", Dr. Steinman's "opinion that [Plaintiff] would have difficulty interacting with others is not supported" and, therefore, gave "his opinion with respect to her ability to interact with others little weight." AR 368. While the ALJ did not specify which "above" reasons he relied on, his analysis of Dr. Steinman immediately followed his speculation that Plaintiff would be less than candid with her providers in an effort to obtain benefits. AR 367. This is the analysis the Court rejected in the previous section of this Opinion. In addition, the ALJ discussed inconsistencies between the limitations Dr. Steinman assessed and the activities in which Plaintiff was known to have engaged. The ALJ ultimately concluded, "although [Plaintiff] is limited socially, the record illustrates that she is not limited to the extent as to require the restriction that [Dr. Steinman] assigned. Instead, I have accommodated her social limitations by limiting her to jobs working primarily with things and not people." AR 368.

The ALJ next discussed the opinion of reviewing psychologist Elizabeth Chiang, MD. In March 2009, Dr. Chiang limited Plaintiff to occasional interactions with co-workers, and recommended that she should work in isolation with occasional supervision, and should work primarily with things and not people. AR 368, 731. A year later, in March 2010, state agency psychological consultant Renate Wewerka, PhD, reviewed the records and affirmed Dr. Chiang's opinion. AR 368. The ALJ gave their opinions moderate weight except for again finding that Plaintiff was less limited than they suggested with respect to social functioning. AR 368. In support of this conclusion, the ALJ noted that "as discussed below" Plaintiff continued to attend parties and travel despite her alleged social limitations. AR 368. Although the ALJ referred to

"parties" he only referenced her attending one party between 2009 and the time of his opinion in 2015. With regard to travel, the ALJ did not "discuss below" any travel. The travel the ALJ discussed earlier in his opinion was also limited. Plaintiff stayed in Albuquerque for a month with her best friend in December 2011, she went to Iowa to help her mother move in January 2012, and she went to NA meetings with her husband in April 2012. This limited traveling and party going, while possibly sufficient to justify reducing the weight given to a reviewing psychologist and psychiatrist, is insufficient to justify limiting the consensus opinion of the medical sources.

The ALJ addressed together the opinions of Plaintiff's treating psychologist Carola Kieve and her therapist LISW Alicia Sandoval. The ALJ noted that "[t]hey found marked limitations with respect to her ability to work in coordination or proximity with others without being distracted by them." AR 368. He then gave their opinions little weight based on treatment notes that indicated Plaintiff was stable and did well on her medication, and that Plaintiff herself reported that the medications were helping and that she was feeling good. AR 369. The ALJ further justified the weight provided by noting "[t]heir treatment notes were very minimal and information could only be gleaned from annual reviews of the claimant's care, which did not include detailed observations about her condition during each visit." AR 369. The ALJ further noted that "claimant's lack of consistent therapy suggests her condition was less severe than alleged." AR 369. All of these are legitimate reasons to reduce the weight of a treating doctor. However, the ALJ also stated, "[a]s discussed above claimant's poor reporting also of essence undermines the value of their opinions." AR 369.

The Court takes the ALJ's reference to "poor reporting" to mean Plaintiff's failure to provide credible information to Dr. Kieve and LISW Sandoval. As set forth above, an ALJ

cannot reduce the opinions of treating sources, particularly the opinions of a treating psychologist, based on speculation that the opinions are predicated on fraudulent representations and/or material omissions. The ALJ could consider that Plaintiff worked, drove, attended a party, used heroin, traveled to visit her mother, attended NA meetings with her husband, had an extramarital affair, and had a friend visit her as evidence that contradicts the opinions of treating sources and serves to reduce the weight those opinions are due. The ALJ cannot, however, reduce the weight of the treating source's opinions based on the assumption that Plaintiff failed to provide this information to them, was otherwise dishonest with them and, therefore, their opinions are based on faulty data. The first process entails an ALJ considering the records as a whole, as he must; the latter process entails the ALJ placing himself in the shoes of the treating source, which he must not.

The ALJ next addressed the opinion of Russell Brown, MD, who conducted a psychiatric evaluation of Plaintiff in January 2014. The ALJ noted that Dr. Brown "found marked limitations with respect to ability to sustain an ordinary routine without special supervision . . . marked limitations with respect to activities of daily living, social functioning, and concentration, persistence and pace." AR 369. The ALJ then noted, however, that Dr. Brown's box checking on different sections of the form was inconsistent and that "[h]is inconsistent box checking reduces the credibility of his opinion." AR 369. Therefore, he gave Dr. Brown "little weight with respect to the marked limitations that he found." AR 369. He further justified giving little weight "because his treatment notes indicate that [Plaintiff] failed to attend treatment for six months, from June 2013 to January 2014; that her medication stabilized her mood, that she and her husband were doing well, that she was feeling better, and that her stress was increased by family issues." AR 369. He then stated, "[a]s discussed above claimant's poor reporting also of essence

undermines the value of her opinions." *Id*. Again, the Court finds that the ALJ's use of this last reason constitutes error.

Finally, the ALJ noted that Plaintiff's behavioral health therapist, Sylvia Rodriguez, rendered no opinion about Plaintiff's ability to work, but gave Plaintiff a GAF score of 41. AR 370. The ALJ gave this score little weight, finding that it was not "representative of claimant's long term functioning."[5]

The ALJ's discounting of these medical source opinions relies on non-medical contradictory evidence rather than any contradictory medical evidence. This is because all of the medical evidence points in one direction – toward a finding that Plaintiff has limitations interacting effectively with co-workers and supervisors. The Tenth Circuit has held that "an ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence . . . ." *McGoffin*, 288 F.3d at 1252. While the ALJ does not say he is "outright" rejecting the opinions of Plaintiff's treating physicians, he comes close, as evidenced by his decision to include no limitation with regard to supervision in his RFC.[6]

The ALJ somewhat accounted for Plaintiff's social limitations by restricting her to "jobs involving working primarily with things and not people." AR 362. This limitation is less restrictive than the one the ALJ placed on Plaintiff when he issued his first decision on August 15, 2011. At that time, the ALJ determined that Plaintiff "should have only occasional interaction with co-workers; work in isolation, with occasional supervision; should work

---

[5] Although the ALJ summarized Plaintiff's treatment with Peter Garcia, MD, who intermittently treated Plaintiff from 2007 to 2010, he did not assign a weight to his opinions. AR 364. Similarly, although Plaintiff summarizes Dr. Garcia's treatment, she does not base her motion on any of his treatment or opinions and Defendant does not rely on Dr. Garcia's opinions in its Response. The Court, therefore, also does not focus on Dr. Garcia.

[6] Of course, when a claimant refuses to see an agency medical examiner and almost all medical opinions come from doctors the claimant chooses, the weight of the medical evidence is much more likely to tilt in favor of the claimant.

primarily with things, not people . . . ." AR 16. Thus, based on the record developed between 2011 and 2015, the ALJ removed Plaintiff's limitation of having only occasional interaction with co-workers and working in isolation with occasional supervision.[7]

The medical evidence developed between August 2011 and June 2015, however, points to Plaintiff having more, not less, difficulty with social interactions. Thus, the less restrictive 2015 RFC must be the product of non-medical evidence. And the Court agrees that the non-medical evidence the ALJ considered weighs against a determination that Plaintiff is disabled. The ALJ concluded that Plaintiff worked[8], drove, attended a party, gathered wood on one occasion, attempted to clear snow off of the roof on one occasion, used heroin, traveled to Iowa to visit her mother, attended NA meetings with her husband, had an extramarital affair, and had a friend visit her. This activity, however, falls short of justifying the RFC in place. Despite the ALJ finding a limitation with regard to supervision in 2011, and despite opinions from medical sources that Plaintiff has limitations with regard to supervision, the current RFC contains no limitations with regard to supervision. Indeed, its only reference to supervision is that Plaintiff can "respond appropriately to supervision." AR 362. Driving, attending one party, using heroin, traveling to Iowa, and attending NA meetings all have little to do with being able to be supervised and so do not contradict medical source opinions with regard to supervision limitations.[9] Further, neither the ALJ's decision nor the record indicate how the home healthcare work the ALJ found Plaintiff to have performed bears on Plaintiff's ability to be supervised.

---

[7] Given that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2012, the records from that time frame and before are more useful than her current records in determining whether she should receive DDI benefits.

[8] The Court notes that since working as a home health care provider, Plaintiff has qualified to be a home health care *recipient*. AR 366.

[9] No evidence exists that Plaintiff used heroin for the time period relevant to her DIB or when she saw medical providers prior to 2013.

With regard to the ALJ's decision to generally discount the opinions of the medical sources because he found Plaintiff to be not credible, the Court is mindful of the Tenth Circuit's admonition in *McGoffin* that an "ALJ may not make speculative inferences from medical reports." 288 F.3d at 1252. Other than noting that Plaintiff failed to inform her medical sources about her substance abuse, the ALJ did not (and likely cannot) say what false information Plaintiff provided to medical sources and on what information they based their opinions. Given that the treating psychologists and therapists reached their opinions after treating Plaintiff over time and on multiple occasions, they likely assessed Plaintiff based on an array of information she provided. To the extent they did not have the contradictory information the ALJ cited, it is difficult to know how their opinions might have changed had they been provided with this information.

To the extent the treating psychologists and other treating sources did have the contradictory information the ALJ cited (the information, after all, was primarily drawn from Plaintiff's medical records), the ALJ needed to address whether other information existed to support the opinions of the medical sources. Because the ALJ did not engage in this analysis, and because medical source opinions consistently contain limitations not found in the ALJ's RFC assessment, substantial evidence does not exist to support that RFC assessment.

### D.  The ALJ's Decision to Dismiss Plaintiff's Case Based on Her Refusal to Cooperate Stands in Light of Plaintiff's Failure to Appeal that Decision

The ALJ's primary basis for denying Plaintiff benefits was that Plaintiff rejected the agency's first two consultative examiners and failed to show up for her appointment with the third. In so doing, the ALJ relied on 20 C.F.R. § 404.1518, which states in relevant part, "If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to

24

determine your disability or blindness, we may find that you are not disabled or blind." 20 C.F.R.

§ 404.1518. Courts have further indicated that a claimant's decision not to appear for

consultative examinations can have detrimental consequences. *See McCoy v. Barnhart*, 309

F.Supp.2d 1281, 1285 (D. Kan. 2004) (noting Social Security Administration "depends on

medical or psychological consultants to execute [its] technique [of evaluating claims of mental

impairment]", claimant's failure to attend three scheduled consultative examinations "effectively

waived her claim of a severe mental impairment" and "frustrated the Defendant's effort to

evaluate her claim."); *Brown v. Colvin*, 992 F.Supp.2d 947, 957 n.7 (D. Neb. 2014) ("The refusal

to attend a consultative [sic] examination without good cause is grounds alone to find a claimant

is not disabled").

As the ALJ explained, Plaintiff objected to the first two consultative examiners. AR 355.

Even though Defendant disagreed with the basis for Plaintiff's objections to the first two

examiners, it accommodated Plaintiff by setting up an appointment with a third consultative

examiner. AR 355. Defendant, however, advised Plaintiff that this consultative examiner was the

last one available in Plaintiff's area and that "[f]ailure to attend this exam will likely result in a

denial of your case due to your failure to cooperate." AR 355. Despite this warning, Plaintiff did

not show up to this third scheduled examination.

During Plaintiff's April 22, 2015 hearing, the ALJ asked Plaintiff's counsel if he could

explain what happened. AR 422. Plaintiff's counsel replied that he could not. AR 422. The ALJ

then asked Plaintiff's counsel if he advised his client not to attend the third examination. AR 422.

Plaintiff's counsel replied, "I don't, I don't know." AR 422.[10]  When questioning Plaintiff, the

ALJ observed that there was a note in the record that the consultative examiner's office reported

---

[10] While the Court need not determine for the purposes of this Opinion whether Plaintiff's counsel in fact advised his client not to attend her consultative medical examination, it notes that such gamesmanship is clearly inappropriate and antithetical to determining a disability claim on its merits.

that, prior to the exam, the office had called Plaintiff to verify that she was going to attend the exam and Plaintiff advised the office that her attorney told her not to go to the exam. AR 438. When the ALJ asked Plaintiff if that happened, Plaintiff responded, "I honestly don't remember that." AR 438. Based on this record, the ALJ concluded that Plaintiff "knowingly and willingly failed to attend a third consultative exam." AR 355. The ALJ further concluded that Plaintiff was "clearly 'doctor shopping' and likely evading examination because she wishes to conceal material facts." AR 356. He determined that good cause did not exist for missing the examination and stated, "I therefore dismiss this case for such failure to cooperate." AR 356.

In Defendant's response brief and Plaintiff's reply brief, the parties debate the merits of the ALJ's decision to dismiss Plaintiff's case pursuant to 20 C.F.R. § 404.1518.[11] As Defendant points out, Plaintiff failed to address this ground for dismissal in her opening brief. Doc. 20 at 9. The district court acts as a first-tier appellate court in reviewing social security cases. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1501 (10th Cir. 1992). When an appellant does not include an issue in the statement of issues in the party's initial brief, that issue is waived on appeal. *See Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (recognizing "that waiver principles developed in other litigation contexts are equally applicable to social security cases. Thus, waiver may result from the disability claimant's failure to (1) raise issues before the magistrate judge, (2) object adequately to the magistrate judge's recommendation, (3) preserve issues in the district court as a general matter, or (4) present issues properly to this court." (internal citations omitted)); *Reitmayer v. Colvin*, 2016 WL 4460616 (D. Kan. Aug. 24, 2016)

---

[11] Plaintiff, in her Reply, supports her position with a reference to the Social Security Administration's Hearings, Appeals, and Litigation Law (HALLEX) Manual. Doc. 21 at 7.  Although the Court does not address the merits of this issue in light of Plaintiff's failure to raise it in her opening brief, the Court notes that a sister court has stated, "HALLEX . . . [provisions] do not have the force of law, are not binding on the [Social Security Administration], and do not provide a basis for the Court to rule." *McCoy v. Barnhart*, 309 F.Supp.2d 1281, 1284 (D. Kan. 2004).

(determining that claimant waived an issue by failing to present it in his opening brief and raising it for the first time in his reply brief); *Pompeo v. Board of Regents of the University of New Mexico*, No. 15-2179, slip op. 10 n.1 (10th Cir. March 28, 2017) (concluding that the plaintiff's failure to raise an issue in briefing regarding the dismissal of her claim against a defendant constituted waiver of that issue); *Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Cont'l Ins. Co.*, 891 F.2d 772, 776 (10th Cir. 1989) (citing *Bledsoe v. Garcia,* 742 F.2d 1237, 1244 (10th Cir.1984)). The ALJ clearly set forth two separate and distinct grounds for denying benefits to Plaintiff and the record contains no reason, compelling or otherwise, for Plaintiff not to address both issues on appeal. AR 356. In choosing not to address the ALJ's decision to deny her benefits based on her willful failure to appear at her consultative examination, Plaintiff has waived any challenge to dismissal on that basis. Therefore, the Court need not address the merits of this issue. The decision of the ALJ is affirmed.

## IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Reverse and Remand for Rehearing. Doc. 16.

UNITED STATES MAGISTRATE JUDGE
**Sitting by Consent**